IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FREEDOM FROM RELIGION
FOUNDATION, INC., ANNIE
LAURIE GAYLOR and DAN BARKER,

|  |  |
|---|---|
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| | 09-cv-439-wmc |
| STEPHEN AYERS, Acting Architect | |
| of the Capitol, | |
| Defendant. | |

---

Plaintiffs Freedom From Religion Foundation ("FFRF") and two of its members initiated this lawsuit seeking to obtain a judgment declaring that the concurrent resolution of the U.S. House of Representatives directing defendant, in his official capacity as the Architect of the Capitol, to engrave the Pledge of Allegiance and the National Motto in the Capitol Visitor Center violates the Establishment Clause. Defendant has moved to dismiss plaintiffs' first amended complaint for several reasons, including a lack of standing. (Dkt. #15.) Plaintiffs assert that they have standing to challenge the constitutionality of the resolution based solely on their status as federal taxpayers and, in the case of FFRF, as an organization representing members who are federal taxpayers.[1] (1st Am. Compl., dkt. #13, ¶ 6.) For the reasons explained below, none of FFRF's members have taxpayer standing on their own, including the individual plaintiffs, with respect to the claim sought. Thus, to be

---

[1] Thus, FFRF's "representational standing" is dependent on whether any of its members have standing to sue on their own. *Freedom From Religion Foundation, Inc. v. Nicholson*, 536 F.3d 730, 737 (7th Cir. 2008) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

adjudicated neither does FFRF.  Accordingly, plaintiffs' complaint will be dismissed without prejudice for lack of standing.


OPINION

A.    Analytical Framework For Determining Taxpayer Standing

    1.  Supreme Court Precedent

"Article III of the Constitution limits judicial power of the United States to the resolution of 'Cases' and 'Controversies,' and 'Article III standing . . . enforces the Constitution's case-or-controversy requirement.'"  *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 593 (2007) (alteration in original) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (internal quotation omitted)).  In *Frothingham v. Mellon*, decided with *Massachusetts v. Mellon*, 262 U.S. 447 (1923), the Supreme Court established a general rule against taxpayer standing.  This general rule stems from the logic that "the interest of a federal taxpayer in seeing that Treasury funds are spent in accordance with the Constitution does not give rise to the kind of redressable 'personal injury' required for Article III standing."  *Hein*, 551 U.S. at 599.

Some 45 years after *Frothingham* was decided, the Supreme Court returned to the issue of taxpayer standing in *Flast v. Cohen*, 392 U.S. 83 (1968), and carved out a "narrow exception" to that general rule.  *Hein*, 551 U.S. at 593.  In *Flast*, the Supreme Court determined that a taxpayer could have standing if "there is a logical nexus between the [taxpayer] status asserted and the claim sought to be adjudicated."  392 U.S. at 102.  The

2

*Flast* Court articulated a two-part test to determine whether such standing exists in a given

case:

> First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked.  Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. . . . Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged.  Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8.

*Id.* at 102-03.  The Court went on to determine that the plaintiffs in *Flast* satisfied both

parts of this test, because "[t]heir constitutional challenge [was] made to an exercise by

Congress of its power under Art. I, § 8, to spend for the general welfare" and they alleged

that "the challenged expenditures violate[d] the Establishment and Free Exercise Clauses of

the First Amendment."  *Id.* at 103.

    In the Supreme Court's most recent opinion regarding the *Flast* exception, a plurality

provided further guidance regarding application of the exception.  *Hein*, 551 U.S. 587.  With

respect to application of the first part of the test, the *Hein* Court  "concluded that the

taxpayer-plaintiffs had established the requisite 'logical link between [their taxpayer] status

and the type of legislative enactment attacked," because "the alleged Establishment Clause

violation in *Flast* was funded by a specific congressional appropriation and was undertaken

pursuant to an express congressional mandate."  *Id.* at 604 (quoting *Flast*, 392 U.S. at 102).

The plurality explained that the taxpayer-plaintiffs in *Hein* did not fit under the *Flast*

exception because:

> [t]he link between congressional action and constitutional violation that supported taxpayer standing in *Flast* is missing here. [Plaintiffs] do not challenge any specific congressional action or appropriation; nor do they ask the Court to invalidate any congressional enactment or legislatively created program as unconstitutional.  That is because the expenditures at issue here were not made pursuant to any Act of Congress.  Rather, Congress provided general appropriations to the Executive Branch to fund its day-to-day activities.  These appropriations did not expressly authorize, direct, or even mention the expenditures of which respondents complain.  Those expenditures resulted from executive discretion, not congressional action.

*Hein*, 551 U.S. at 605.

### 2.  Seventh Circuit Precedent

Regardless of any uncertainties left by the lack of a clear majority decision in *Hein*, the Seventh Circuit has found that decision offers "significant guidance concerning the breadth of [the Supreme Court's ] taxpayer standing jurisprudence" and that the plurality's explanation of the reasoning in *Flast* "clarified significantly the law of taxpayer standing for lower federal courts."  *Hinrichs v. Speaker of the House of Representatives of Ind. Gen. Assembly*, 506 F.3d 584, 590 and 599 (7th Cir. 2007).  More specifically, the Seventh Circuit reads *Hein* as (1) "narrowly confining [the *Flast* exception] to its facts" and (2) counseling lower courts that the exception "is not to be expanded *at all*."  *Laskowski v. Spellings*, 546 F.3d 822, 823 and 826 (7th Cir. 2008) (emphasis in original) (citing *Hein* in general).  Still, after *Hein*, the court emphasized that "taxpayers continue to have standing to sue for alleged Establishment Clause violations wrought by specific congressional appropriations under the Article I, Section 8 taxing and spending power."  *Laskowski*, 546 F.3d at 823.

In *Hinrichs*, decided four months after *Hein*, the Seventh Circuit toured the Supreme

4

Court's taxpayer standing jurisprudence and gleaned "several guiding principles."  506 F.3d at 598.  One of those principles was that "only 'expenditures made pursuant to an express congressional mandate and a specific congressional appropriation' met the first nexus requirement; the plurality [in *Hein*] rejected the plaintiffs' claim that any 'expenditure of government funds in violation of the Establishment Clause' would meet this requirement." *Id.* (citing *Hein*, 551 U.S. at 603-04 (internal quotation omitted)).

Applying this principle to a taxpayer challenge of the Indiana House of Representatives' practice of legislative prayer, the Seventh Circuit concluded that "the nexus requirements of *Flast*, as explained in *Hein*," had not been met.  *Hinrichs*, 506 F.3d at 598-99.  The Seventh Circuit explained that the legislative prayer, which was provided for under Indiana House Rule 10.2, was "not mandated by statute."  *Id.* at 598.  Rather, it was "a matter of House tradition."  *Id*.  Additionally, the plaintiffs had failed to point "to any *specific* appropriation of funds by the legislature to implement the program."  *Id.* (emphasis added).

In other words, "[t]he appropriations, which cover[ed] the incidental costs of the program, 'did not expressly authorize, direct, or even mention, the expenditures.'" *Id.* at 599 (quoting *Hein*, 551 U.S. at 605).  In addressing the dissent's assertion, "that the requisite connection between the allegedly unconstitutional practice and the expenditure of funds is established by the initial adoption of House Rule 10.2 in conjunction with the House's later action in passing a budget, which included appropriations for the general operations of the House," the majority in *Hinrichs* explained:

> [w]e do not believe these two actions satisfy the requirement, set forth in *Hein*,
> that the challenged expenditures be "expressly authorized or mandated" by a

5

> "specific congressional enactment." . . . [T]here is no specific appropriation
> either for Rule 10.2 or for the Minister of the Day program.  Absent such an
> appropriation, the necessary link between the taxpayer and the expenditure
> for the allegedly unconstitutional practice has not been established.

*Hinrichs*, 506 F.3d at 599 n.8 (internal citation omitted).

In *Freedom From Religion Foundation, Inc. v. Nicholson*, 536 F.3d 730, 737 (7th Cir. 2008), the Seventh Circuit directly addressed the FFRF's assertion that it had taxpayer standing to challenge specific aspects of the Department of Veterans Affairs' Chaplain Service administered by the Veteran's Health Administration.  The Seventh Circuit determined that in light of the fact that the congressional program was supported by a general appropriation of $29 billion to the VA for necessary expenses, the plaintiff had failed to show that "these appropriations to the VHA expressly authorize[d] or direct[ed] the specific expenditures" that it was challenging.  *Id.* at 742 (quotation marks omitted).  The Seventh Circuit, therefore, held that the lawsuit was "not predicated, as *Hein* requires, on the notion that *Congress* appropriated money from federal taxpayers expressly for the creation of a clinical chaplaincy.  Instead, [the plaintiff] simply [was] challenging the executive branch's approach to veterans' healthcare and the manner in which the executive, in its discretion, uses the services of its chaplain personnel." *Id.* (footnotes omitted and emphasis in original).

In *Nickelson*, FFRF argued that its action was similar to that of the plaintiffs in *Bowen v. Kendrick*, 487 U.S. 589 (1988).  In distinguishing the plaintiffs in *Kendrick* from the plaintiff before it, the Seventh Circuit noted the plurality in *Hein* had explained that the key to satisfaction of the *Flast*-exception in *Kendrick* was that the plaintiffs there "were

challenging *both* 'a program of disbursement of funds pursuant to Congress' taxing and spending powers' *and* 'how the funds authorized by Congress [were] being disbursed *pursuant to the AFLA's statutory mandate*.'" *Nicholson*, 536 F.3d at 743-44 (emphasis and alteration in original) (quoting *Hein*, 551 U.S. at 607 (emphasis in original) (quoting *Kendrick*, 487 U.S. at 619-20)).

The Seventh Circuit explained that a key difference in the case before it was that "the congressional action here–the statutory mandate that the VHA provide medical care to veterans–does not contemplate that any funds would be disbursed to support the particular aspects of the Chaplain Service that [the plaintiff] contests." *Nicholson*, 536 F.3d at 744-45. The parts of the Chaplain Service that allegedly violated the Establishment Clause had been "established wholly at the discretion of the executive" not Congress. *Id.* at 745. In *Nicholson*, the court concluded, the FFRF had, therefore, failed to demonstrate that its lawsuit was "predicated on the notion that *Congress* appropriated money from federal taxpayers expressly for the creation of a clinical chaplaincy." *Id.* (emphasis in original).

In *Laskowski*, 546 F.3d at 825, the Seventh Circuit addressed the issue of whether a taxpayer had standing to challenge a congressional earmark of $500,000 for a grant to the University of Notre Dame to support a teacher-training program. In reaching its decision, the Seventh Circuit discussed the *Flast*-exception and its application since *Hein*, noting that "[o]nly when a taxpayer challenges a specific congressional appropriation–not a government program or activity funded from general appropriations–will the link to the Article I, section 8 taxing and spending power be sufficient to support standing under *Flast*." *Laskowski*, 546

7

F.3d at 826 (citing *Hein*, 551 U.S. at 610-11).   The court further explained that the importance of the plurality's decision in *Hein* was that "the reach of *Flast* is now strictly confined to the *result* in *Flast*.  And the result in *Flast* was that the taxpayers had standing to seek an injunction to halt a specific congressional appropriation alleged to violate the Establishment Clause." *Laskowski*, 546 F.3d at 827 (emphasis in original).  Under this strict confinement of *Flast* by *Hein*, the Seventh Circuit determined that "[p]ermitting a taxpayer to proceed against a private grant recipient for restitution to the Treasury as a remedy in an otherwise moot Establishment Clause case would extend the *Flast* exception beyond the limits of the result in *Flast*." *Laskowski*, 546 F.3d at 827.

B.      Application of the Framework Here

In this case, plaintiffs argue they fit into the narrow *Flast* exception because (1) they are federal taxpayers who oppose the Congressional concurrent resolution, H.R. Con. Res. 131, 111th Cong. (July 10, 2009), in which defendant was directed to take action that allegedly supports religion in violation of the Establishment Clause and (2) fulfillment of the directive will necessarily be funded by taxpayer appropriations.  As explained above, the Supreme Court's decision in *Hein*, 551 U.S. 587, as well as the Seventh Circuit's application of the *Flast* exception post-*Hein*, strongly suggest otherwise.

Plaintiffs fail to establish standing because they cannot point to any *specific* congressional appropriation for the allegedly unconstitutional concurrent resolution. Plaintiffs allege that performing the engraving as required by the concurrent resolution cost

between $100,000 and $150,000 "funded from U.S. taxpayer appropriations made by Congress[.]" (1st Am. Compl., dkt. #13, ¶38.) This allegation -- which is the only allegation in the complaint regarding the funding of the resolution -- does not provide the necessary link between taxpayer status and the expenditure. "[U]se of funds for [an] allegedly unconstitutional program, without more, is not sufficient to meet the nexus required by *Flast*"; the appropriation of those funds for such a purpose is what provides the necessary link between taxpayer and expenditure to create standing. *Hinrichs*, 506 F.3d at 599-600. Further, a government program or activity, such as construction by the Office of the Architect of the Capitol, funded by *general* appropriations is not sufficient to create the necessary link. *See Laskowski*, 546 F.3d at 826.

Nonetheless, plaintiffs' contend that the circumstances fit within the narrow confines of *Flast*, even after *Hein*, because they are not challenging an Executive Branch program where executive discretion is involved. This focus on executive action and spending misses the mark. While *Hein* emphasized that *Flast* was limited to congressional actions, as opposed to executive action, that was not the fundamental difference between those cases. As the Seventh Circuit explained in *Hinrichs*, "[t]he plurality of the Court made clear in *Hein* that only expenditures made pursuant to an express congressional mandate *and a specific congressional appropriation* me[et] the first nexus requirement[.]" 506 F.3d at 598 (emphasis added) (internal quotation omitted).

Simply put, "[a]bsent [a specific] appropriation, the necessary link between the taxpayer and the expenditure for the allegedly unconstitutional practice has not been

established." *Id.* at 599 n.8; *see also Hein*, 551 U.S. at 603-04 ("The expenditures at issue in *Flast* were made pursuant to . . . a *specific* congressional appropriation,"; "The expenditures challenged in *Flast*, then, were funded by a *specific* congressional appropriation"; "Given that the alleged Establishment Clause violation in *Flast* was funded by a *specific* congressional appropriation." (emphasis added)).

Plaintiffs' alternate argument that defendant's implementation of the resolution will necessarily result in use of taxpayer money because his office does not have any other sources of revenue to pay for the required actions is no different from the "traceability" argument rejected by the plurality in *Hein*, 551 U.S. at 613-14.  Any funds used by the government will necessarily result in the use of taxpayer money, just as any funds used by the Executive Branch for statements or conferences would be traceable to taxpayer money.

Under binding Seventh Circuit case law, the fact that funds for an allegedly unconstitutional action stem from taxpayer funds in the Treasury, however, does not create standing:

> [I]nterest in the moneys of the treasury–partly realized from taxation and partly from other sources–is shared with millions of others, is comparatively minute and indeterminable, and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity.
>
> The administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a matter of public and not individual concern.

*Frothingham*, 262 U.S. at 487.

Whether defendant is being required by Congress to act, or by an Executive Branch

officer, plaintiffs' circumstances still involve the mere use of taxpayer funds in the form of general appropriations for the Office of the Architect of the Capitol for a government activity, and without specific appropriations for those funds, its use does not create the nexus required by *Flast*. *Hinrichs*, 506 F.3d at 599-600.[2]  In the end, none of plaintiffs' allegations support the conclusion that the appropriations covering the costs of the engraving "expressly authorize, direct, or even mention the expenditures." *Hein*, 551 U.S. at 605.

Agreeing with plaintiffs that they have standing by challenging an allegedly unconstitutional congressional concurrent resolution funded by general appropriations "would extend the *Flast* exception beyond the limits of the result in *Flast*." *Laskowski*, 546 F.3d at 827.  Despite plaintiffs' contention to the contrary, the "chasm" between general congressional appropriations and spending funds from those appropriations for an activity or program instituted by a government employee at the behest of the Executive Branch is not bridged merely because the spending is done by a government employee at the behest of Congress.

---

[2]  The complaint contains no allegation as to the exact source of the spending for the engravings at issue here.  Nor does House Concurrent Resolution 131 contain any reference to the source of funding.  Presumably funding for the engravings came from a general appropriation to the Capital Visitor Center.  Public Law 111-8, 12 Stat. 822 (Mar. 11, 2009) and Public Law 111-68, 123 Stat. 2032 (Oct. 11, 2009) both contain funding provisions to the Capital Visitor Center, but neither act -- one passed a few months before the resolution at issue and one passed a few months after -- reference the engravings.  In other words, there is no reference to the engravings in the likely sources of the funding nor is there any reference to funding in the resolution.  In fact, there is a significant time gap between the passing of the resolution and any generally appropriations bill.  In other words, the court here is not presented with a situation where a congressional resolution coincided with a general appropriations bill.

Finally while plaintiffs argue that denying them taxpayer standing here "would seemingly reward and encourage a sham" (Pls.' Br., dkt. #20, at 24), it derives from a constitutional principle that "federal courts are not empowered to seek out and strike down any governmental act that they deem to be repugnant to the Constitution." *Hein*, 551 U.S. at 598. That plaintiffs lack standing under the narrow taxpayer exception found in *Flast* -- the only standing argument they have put forward -- does not mean that the constitutionality of the concurrent resolution may go unchallenged, even by them. It merely establishes that challenging the resolution as a taxpayer is not sufficient to show that they "sustained or [are] immediately in danger of sustaining some direct injury as the result of [the resolution's] enforcement" as opposed to merely suffering "in some indefinite way in common with people generally." *Frothingham*, 262 U.S. at 488.

Even if plaintiffs' allegations fit within the narrow exception in *Flast*, the plaintiffs' claims are moot as pled, because the expenditures have already occurred and the engravings have already been completed. (1st Am. Compl., dkt. #13, ¶ 24 ("Rep. Forbes announced in last September of 2009 the unveiling of the engraving of 'In God We Trust' in a permanent and prominent location in the Capital Visitors Center[.]"), ¶ 38 ("The directive to the defendant to engrave religious messages in prominent places in the Capital Visitor Center *has cost* approximately $100,000 - 150,000, *funded* from U.S. taxpayer appropriations made by Congress[.]"), ¶ 66 ("The defendant's implementation of the Congressional directive *has resulted* in the prominent display of government speech that discriminates in favor of, endorses and promotes religion.") (emphasis added).

12

As the Seventh Circuit explained in *Laskowski*, taxpayers only "have standing to sue for injunctive relief against specific congressional appropriations." 546 F.3d at 827. The injunction plaintiffs request here -- "an order prohibiting the defendant from continuing to prominently display 'In God We Trust' and the Pledge of Allegiance in the Capital Visitor Center" (1st Am. Compl. p. 15) -- does not redress the taxpayer's alleged injury. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that to establish standing the plaintiff must demonstrate that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision") (quotation marks and internal citation omitted). Here, the relief that presumably would have addressed plaintiffs' alleged injury -- an order blocking any expenditures for the engravings -- is no longer possible.

Accordingly, plaintiffs have failed to establish Article III standing to bring this lawsuit and without it, their case must be dismissed for lack of subject-matter jurisdiction.

ORDER

IT IS ORDERED that defendant Stephen Ayers' motion to dismiss (dkt. #15) is GRANTED on grounds of plaintiffs' insufficient standing to sue and this case is DISMISSED without prejudice for lack of subject-matter jurisdiction. The clerk of court is directed to close this case.

Entered this 29th day of September, 2010.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

13